IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:18-cv-01093-LTB

MARY D. BEARD,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

---

ORDER

---

Plaintiff Mary D. Beard appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal.

After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the Commissioner's final order.

### I.    Statement of the Case

Plaintiff is a 55 year-old woman with a tenth-grade education. [Administrative Record ("AR") 192, 197] She seeks judicial review of SSA's decision denying her applications for disability insurance benefits and supplemental security

1

income. Pl.'s Br., ECF No. 16. Plaintiff filed her applications for disability insurance benefits and supplemental security income in August 2010 alleging that her disability began in June 2010. [AR 161–63]

The applications were initially denied in October 2010. [AR 69–72] After Plaintiff's request for review, the Administrative Law Judge ("ALJ") conducted an evidentiary hearing and issued a written ruling March 2012. [AR 9–52, 77] In that ruling, the ALJ denied Plaintiff's application on the basis that she was not disabled because, considering her age, education, work experience, and residual functional capacity, Plaintiff could perform jobs that existed in significant numbers in the national economy. [AR 21]

The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–4]; 20 C.F.R. §§ 404.981, 416.1481. In March 2016, the Tenth Circuit remanded SSA's decision to deny Plaintiff benefits. [AR 389–97] The Tenth Circuit found that the ALJ improperly rejected the opinion of an examining psychologist. [AR 389–93]

In November 2016, a different ALJ held another oral hearing. [AR 345–65] Again, Plaintiff's claims were denied. [AR 324–38] The SSA Appeals Council denied Plaintiff's request to review, making the ALJ's decision final. [AR 318–21] Plaintiff timely filed her Complaint with this court seeking review of SSA's final decision. Compl., ECF No. 1.

## II. RELEVANT MEDICAL HISTORY

Plaintiff's appeal relates to her mental health. ECF No. 16 at viii. The relevant medical history includes reports and examinations from Carlos Rodriguez, PhD, Jeanette Grant, LCSW, CAC, and Robert Pelc, PhD, ABPP.

### A. Dr. Rodriguez

Dr. Rodriguez first saw Plaintiff in July 2010 when he performed a clinical interview. [AR 257–58] Dr. Rodriguez noted that Plaintiff was not on antidepressants at the time and had not been in mental health counseling. [AR 257] He noted that she had psychosocial stressors and grieved the loss of her husband, who died in 2009. [*Id.*] He stated that Plaintiff had a "flat affect and depressed demeanor," reported a history of depression and anxiety, and appeared to be functioning significantly below average in her intellectual capabilities. [*Id.*] Dr. Rodriguez diagnosed Plaintiff with major depression and an anxiety disorder and rule-out diagnoses of borderline intellectual functioning, mild mental retardation, and academic developmental disorders. [AR 258] He concluded that Plaintiff was not capable of managing monthly benefits on her own behalf, needed further evaluation regarding intellectual functioning, and referred her to a mental health center for treatment. [*Id.*]

In November 2010, Dr. Rodriguez performed a diagnostic interview and a mental evaluation. [AR 307–14] Dr. Rodriguez again noted Plaintiff's flat affect and depressed demeanor and added that she appeared stressed and tremulous. [AR 307–08] He wrote that Plaintiff reported difficulty with attention, concentration and short-term memory, but that she presented an appropriate attitude in the

evaluation. [AR 308] Dr. Rodriguez added that he established rapport and spoke freely with Plaintiff and that she did not display any bizarre behaviors during the evaluation. [*Id.*]

Dr. Rodriguez performed the "Folstein Mini-Mental Status Examination" and found that Plaintiff was "oriented to person, place, and time, per her appropriate responses to orientation type questions." [AR 308] She could recall three of three objects immediately and one of the three objects after five minutes, "indicating the presence of deficits in short-term auditory memory." [*Id.*] She had "great difficulty in performing serial seven subtractions, indicating the presence of deficits in attention and calculation abilities." [*Id.*] She had "difficulty in recalling the names of five western states, indicating the presence of deficits in long-term memory for overlearned environmental information," but could name simple objects, such as a watch and a pen. [*Id.*] She could follow two steps of a three-step command, "indicating the presence of deficits in the ability to process auditory information." [*Id.*] Further, her "responses to comprehension type questions indicate the presence of deficits in basic social judgement." [*Id.*] Dr. Rodriguez suggested the presence of a neurocognitive impairment and found Plaintiff to have marked or extreme mental limitations in his mental capacity evaluation. [AR 308, 313–14]

Plaintiff saw Dr. Rodriguez once per year between 2012 and 2016. [AR 683–87] His diagnoses stayed similar throughout this time. [*Id.*] In September 2016, Dr. Rodriguez performed another psycho-diagnostic interview. [AR 836] Dr. Rodriguez's observations generally paralleled those of his earlier examinations. He found

4

Plaintiff to be teary-eyed with a flat affect and a depressed demeanor. [AR 837] He found that "her thoughts and her speech content do not reflect the presence of flight of ideas, loose associations, or confusion" and were "goal directed, coherent, and do not display the presence of hallucinations, delusions, or other psychotic manifestations." [*Id.*]

He performed a mental status examination, where he noted that Plaintiff was oriented to person, place, and time. [*Id.*] She could recall three-of-three objects immediately, but only two-of-three after five minutes. [*Id.*] Plaintiff was unable to perform serial seven subtractions, could name five western states, and was deficient in basic social judgment and her abstraction ability. [*Id.*] Dr. Rodriguez noted that Plaintiff's responses suggested "the presence of neurocognitive impairment and/or significantly below average intellectual functioning." [*Id.*]

In the evaluation, Plaintiff reported: stress from finances; stress from her diabetes diagnosis; continued sadness, discouragement, hopelessness, and daily crying spells; social isolation, loneliness, and irritability; a history of abusive relationships; a history of drug and alcohol abuse; and limited job skills. [AR 837–39] Dr. Rodriguez concluded that Plaintiff presented symptoms of posttraumatic stress disorder, major depressive disorder, and rule-out diagnoses of borderline intellectual functioning and a neurocognitive impairment. [AR 839–40] He added that Plaintiff's "ability to engage in basic work related activities including understanding, memory, sustained concentration, persistence and pace, social interaction, and adaptation to job changes are moderately to significantly impaired

5

due to her cognitive deficits and her psychopathology." [AR 840] Dr. Rodriguez found Plaintiff to have moderate or "at least marked" mental limitations in his RFC evaluation. [AR 841–43] He checked boxes indicating that Plaintiff would be mentally off task for more than thirty percent of the work week and would not be able to work three or more days per month because of her mental impairments. [AR 842]

### B. Ms. Grant

In an initial assessment in January 2012, Ms. Grant wrote that Plaintiff experienced significant symptoms of depression and anxiety and diagnosed her with severe major depressive disorder. [AR 305] In a follow up appointment, Ms. Grant noted that Plaintiff was tearful throughout the session, but had an improved affect by the end. [AR 301–02] Her mental state generally fluctuated in these follow up appointments. [AR 299–302, 744–45]

Ms. Grant saw Plaintiff again in July 2013. [AR 740] While Plaintiff appeared depressed and had eating and sleeping problems, Ms. Grant noted that Plaintiff's affect was appropriate; her memory was intact; her intellect was average; her attitude was cooperative, but hopeless and discouraged. [AR 742] She added that Plaintiff maintained attention, had fair reasoning, impulse control, judgment, and insight. [*Id.*] Plaintiff had some paranoid thoughts, but no suicidal ideation. [*Id.*] Over the course of the next three years, Ms. Grant continually saw Plaintiff. Ms. Grant consistently noted that Plaintiff was depressed, but the bulk of these appointments noted generally unremarkable mental status exams. [AR 688–743]

At times, Ms. Grant noted that Plaintiff's mood was notably more depressed.

6

[AR 692, 707, 716, 721] However, Ms. Grant noted that there was "[s]ome progress" or no change in mental status in most of Plaintiff's appointments. [AR 692, 695, 701, 704, 707, 710, 713, 716, 719, 721, 724, 727, 730, 732–37, 739]

### C. Dr. Pelc

Dr. Pelc testified as a medical expert in Plaintiff's second hearing. [AR 357] He noted that the "preponderance of the record is related to major depression." [AR 358] He added that Dr. Rodriguez's findings of a "rule out of a borderline intellectual functioning problem or mild mental retardation" was not substantial enough to identify an intellectual disability because Dr. Pelc could not find "formal psychological tests of cognitive functioning other than mental status examination[s]." [AR 358]

Dr. Pelc compared Dr. Rodriguez's two diagnostic interviews of Plaintiff and noted that in the more recent examination occurring after remand, Dr. Rodriguez appears to perceive Plaintiff as having improved short-term memory and intact long-term memory. [AR 360] Dr. Pelc continued by looking at the limits Dr. Rodriguez set in the earlier report, noted a discrepancy between the two findings, and added that he did not find support in the record that would justify "a major shift in treatment plan to increase function." [*Id.*] Dr. Pelc found that Plaintiff was moderately impaired with no decompensation. [AR 360–61]

### III. LEGAL STANDARDS

### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." *Id.* If she is, benefits are denied and the inquiry stops. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite his impairments—and asks whether the claimant can do any of her "past relevant work" given that RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. 20 C.F.R.

8

§§ 404.1520(g), 416.920(g).

In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

9

## IV. THE ALJ'S RULING

In her ruling, the ALJ followed the five-step analysis outlined *supra*. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 26, 2010. [AR 329] Under step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, hypoxemia, major depressive disorder, and anxiety disorder. [*Id.*]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [AR 330–31] The ALJ found that Plaintiff had the RFC to perform medium work except that she was limited in that she

> [C]an occasionally lift/carry up to 50 pounds and frequently up to 25 pounds; can stand and/or walk up to six hours in au eight-hour day; can sit up to six hours in an eight-hour day; can frequently balance, stoop, kneel, crouch and crawl, and cannot work at unprotected heights or operate dangerous moving machinery. In addition, the claimant is able to understand and carry out simple one to step two instructions; can sustain persistence, concentration and pace for these instructions over a typical workday/workweek in a low stress environment, defined as interactions with the general public, co-workers and supervisors on an occasional basis; can tolerate supervision, routine work changes, and can plan and set simple goals, and can travel and recognize and avoid work hazards.

[AR 331]

The ALJ found that Plaintiff was unable to perform her past relevant work as a fast food cook, fulfilling step four. [AR 337] In the fifth and final step, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. [AR 337–38] The ALJ supported her decision based in part by the testimony of the vocational expert and related hypotheticals, and found that

10

Plaintiff could be a product assembler, housekeeper, and laundry worker. [AR 338] Thus, the ALJ concluded that Plaintiff was not disabled. [*Id.*]

## V. ISSUE ON APPEAL

In her appeal, Plaintiff solely argues that the ALJ improperly assessed Dr. Rodriguez's opinion. ECF No. 16 at 4. She argues that the Tenth Circuit found that the ALJ in the prior decision selectively analyzed Dr. Rodriguez's opinion and that the subsequent ALJ's decision still does not sufficiently account for aspects of his opinion. *Id.* at 4–5. While Plaintiff recognizes that the ALJ reconsidered certain aspects of Dr. Rodriguez's opinion as per the Tenth Circuit's order, she contends that the ALJ only did this is in a superficial fashion and still does not provide sufficient explanation for discounting his opinion. *Id.* at 7.

Defendant responds by noting that, unlike the first decision, the current ALJ had three opinions related to Plaintiff's mental abilities. Def.'s Resp., ECF No. 17 at 8. Defendant argues that there existed discrepancies between Dr. Rodriguez's first opinion in 2010, his 2016 opinion, and Dr. Pelc's 2016 opinion. *Id.* Defendant continues that it was the ALJ's task to resolve the conflicts between the opinions. *Id.* at 8–9. Defendant states that the ALJ reasonably resolved the conflict, giving less weight to Dr. Rodriguez's opinions because: the opinions were inconsistent with Dr. Rodriguez's own findings; the findings of both opinions were largely the same, yet Dr. Rodriguez found Plaintiff less limited in his 2016 opinion; his opinion that Plaintiff's cognitive and social abilities were severely impaired was inconsistent with Ms. Grant's findings; and, as such, the ALJ reasonably relied upon Dr. Pelc's

11

opinion. *Id.* at 10–18.

On appeal to the Tenth Circuit, Plaintiff argued that the RFC determination was flawed because the ALJ improperly rejected the November 2010 opinion from Dr. Rodriguez. [AR 390] The Tenth Circuit agreed with Plaintiff, stating that "the ALJ discussed only a fraction of Dr. Rodriguez's report before rejecting his opinion entirely." [AR 392] The court held that the ALJ ignored Dr. Rodriguez's findings that Plaintiff's "ability to engage in basic work-related activities was significantly impaired and that she had marked or extreme limitations in all areas of work-related functioning." [*Id.*]

The court highlighted that the ALJ ignored Dr. Rodriguez's Folstein assessment, explaining that since the ALJ found Plaintiff not credible, she "could discount Dr. Rodriguez's findings to the extent that they relied on what [Plaintiff] had told him," but that did not justify why the ALJ gave no reasons for rejecting the objective assessment. [*Id.*] Additionally, the court faulted the ALJ for incorporating some of Dr. Rodriguez's findings into her RFC determination, but then not explaining why those findings were acceptable, yet others were not. [AR 392–93] The court remanded "for either adoption of Dr. Rodriguez's opinions or an explanation of why they are rejected." [AR 393]

In the decision that Plaintiff now appeals, the ALJ first recognized that the case was before her on remand from the Tenth Circuit and she was to reweigh Dr. Rodriguez's opinion. [AR 327] In doing so, the ALJ accurately recounted the symptoms Plaintiff reported to Dr. Rodriguez and his ensuing diagnoses. [AR 335]

12

The ALJ afforded the opinion little weight because "Dr. Rodriguez's extreme limitations [were] not supported by his findings during his evaluation." [*Id.*] The ALJ justifies this by explaining that "Dr. Rodriguez noted that the claimant presented an appropriate attitude towards the evaluation procedure"; "could follow two-step instruction and her short term memory was intact"; "presented with no obvious expressive speech deficits or obvious sensory visual difficulties"; "[r]apport was established and she talked to Dr. Rodriguez freely"; and she "did not display any bizarre behaviors during this evaluation procedure . . . ." [*Id.*]

Then, the ALJ considered Dr. Rodriguez's 2016 diagnostic interview, noting that the "findings do not indicate any significant changes from his November 2010 evaluation." [*Id.*] However, Dr. Rodriguez found that Plaintiff's ability to engage in basic work-related activities were "no longer markedly to extremely impaired [], but moderately to significantly impaired." [AR 336] The ALJ added that Dr. Rodriguez still found that Plaintiff would miss more than three days of work each month due to her mental impairments. [*Id.*] This inconsistency lead the ALJ to give little weight to the opinion. [*Id.*]

An ALJ must consider every medical opinion and discuss the weight she assigns to the opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Specific factors to consider include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

13

supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c).

While the ALJ need not explicitly discuss each individual factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ must "give good reasons in the notice of determination or decision for the weight [s]he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d at 1301. As long as a reviewing court can follow the ALJ's reasoning and can determine that correct legal standards have been applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d at 1166.

Here, I find that the ALJ provided sufficient reasoning in her RFC determination when she discounted Dr. Rodriguez's opinions. Plaintiff questions the reasoning the ALJ gave for discounting Dr. Rodriguez's opinions by going through each sentence of the ALJ's justification and simply opining on how the explanation does not correspond with the ALJ's decision. ECF No. 16 at 8–12. However, in context, the reasoning is sufficient. As the Tenth Circuit required, the ALJ discussed the Folstein assessment. [AR 335, 392] Plaintiff disputes the ALJ's finding that her short-term memory was intact, arguing that Dr. Rodriguez found that there were deficits in her short-term memory. ECF No. 16 at 10. Indeed, Dr. Rodriguez wrote that Plaintiff was "able to recall three of three objects immediately

14

and one of the three objects after five minutes, indicating the presence of deficits in short-term auditory memory." [AR 308] Then, Dr. Rodriguez concluded Plaintiff had "marked" or "extreme" limitations in memory and concentration abilities. [AR 313]

But the ALJ discounted Dr. Rodriquez's "extreme limitations." [AR 335] The ALJ explained that Plaintiff: recalled three of three objects immediately, and one of three after five minutes; had difficulty performing serial seven subtractions; named simple objects; and followed two-steps of a three-step command. [*Id.*] As such, the ALJ pointed to reasons why Dr. Rodriguez's finding that Plaintiff had "deficits in short-term auditory memory" was inconsistent with Dr. Rodriguez's own opinion and that, in fact, Plaintiff had an intact short-term memory. [AR 335]; *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (holding that the ALJ appropriately weighed the doctor's opinion when he found that opinion inconsistent with the doctor's own report); *cf. Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (holding that the ALJ did not "pick and choose" supportive evidence and followed the proper procedure for weighing medical opinions when he found an opinion inconsistent with the other medical opinions and with the evidence as a whole) (unpublished).

Then, the ALJ chose to rely upon Dr. Pelc's conclusion that Dr. Rodriguez's reports were contradictory. [AR 336] Dr. Pelc found that Dr. Rodriguez's reports were contradictory because Dr. Pelc's findings indicated that Plaintiff's symptoms improved in 2016. [*Id.*] Dr. Pelc theorized that the "2010 examination related to a period of when the claimant was abusing alcohol" and that Plaintiff was driving

15

where she stated she could not before. [*Id.*] Dr. Pelc found that Plaintiff could "work in an environment with simple cognitive, one to two-step tasks." [AR 336] This reasoning aligns with the ALJ's conclusions to discount both of Dr. Rodriguez's opinions as inconsistent with his own findings and with the record as a whole. [AR 335–36]; 20 C.F.R. § 404.1527(c)(4) (stating ALJ must consider whether opinion is consistent "with the record as a whole").

The ALJ's decision is bolstered by her accurate summary of Ms. Grant's examination findings. [AR 334–35] As Defendant explained, it would have been preferable for the ALJ to directly mention her analysis of Ms. Grant's records as part of the "record as a whole," but the ALJ's analysis of Ms. Grant's records still suffices. ECF No. 17 at 15–16; *cf. Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) (when the ALJ sufficiently discusses the medical evidence, the record as a whole may provide support for discounting a doctor's opinion as inconsistent with the evidence, even if there was not a contemporaneous discussion on the inconsistency) (unpublished). The ALJ described Ms. Grant's records and then immediately went to discussing Dr. Rodriguez's opinions. [AR 334–36]

Taken as a whole, substantial evidence supported the ALJ's reasoning on the weight she gave to Dr. Rodriguez's opinions.

VI. CONCLUSION

ACCORDINGLY, for the preceding reasons, I AFFIRM the Commissioner's final order.

16

Dated: April 5, 2019, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE